Brashear *et al. v.* The City of Madison *et al.*

Filed December 11, 1895.

---

No. 17,167.

BRASHEAR ET AL. *v.* THE CITY OF MADISON ET AL.

MUNICIPAL CORPORATION. — *City.* — *Indebtedness.* — *Constitutional Limitation.*—The constitutional limitation of indebtedness is not violated by a city in purchasing a fire-alarm telegraph, when there is money on hand and appropriated for fire purposes sufficient to pay the cost thereof, although the city is already indebted for more than the constitutional amount, and it may not be a wise thing for the common council to expend the fire appropriation in this way. (See Note at end of opinion.)

PLEADING.—*Facts Peculiarly Within the Knowledge of Opposite Party.*—A pleading need not allege facts peculiarly within the knowledge of the party against whom they should be pleaded, and which are not accessible to the pleader, but should state that such is the case.

From the Jefferson Circuit Court.

*C. A. Korbly* and *W. O. Ford,* for appellants.

*Sulzer & Bear, P. E. Bear, J. W. Kern* and *F. M. Griffith,* for appellees. ·

HOWARD, C. J.—In the complaint in this case the appellants, citizens and taxpayers of the city of Madison, alleged that the common council of said city had entered into a contract with the Gamewell Fire Alarm Telegraph Company for the erection and location of a fire alarm system in said city, for which, on approval, the city was to pay $5,000. It was further alleged that the city was already indebted far beyond the limits fixed by the constitution, being two *per centum* of the value of the taxable property within said corporation, and hence had no power to incur such additional obligation.

Other allegations were : that the city council had been compelled to borrow money to pay current expenses, and had also sold city property for this purpose, for which $1,618.40 was received; that the revenues from taxation for the current fiscal year would not be to exceed $49,827.83 ; that of this sum, appropriations for the fiscal year to the amount of $44,000 had been made, one item of which was "fire, $6,000"; and that at the time of the commencement of this action $22,170.79 of the appropriations so made had been expended.

Prayer for a temporary restraining order and on the final hearing for perpetual injunction.

A restraining order was granted as prayed for, but on the final hearing a demurrer to the complaint was sustained and the restraining order dissolved.

The members of the common council were sworn to support the constitution, and, until the contrary is shown, the presumption must be that they performed their duty. Unless, therefore, it appears clearly from

the allegations of the complaint that the city authorities disregarded the command of the constitution in relation to municipal indebtedness, we must hold that the court did not err in sustaining the demurrer.

Much is said in argument as to the necessity of a fire alarm telegraph for the welfare of the city. This, however, can have little bearing on the decision. The language of the constitution is that the corporation shall not, "in any manner or for any purpose," become indebted beyond the limit fixed. If the city is already indebted to the constitutional limit, then even the most necessary expenses must be met only by the current revenues; and a debt cannot be contracted even for cleansing the streets or for protecting the city from fire. An exception is made by the constitution itself in case of "war, foreign invasion or other great public calamity;" and the exception so made renders the prohibition itself only the more absolute.

In our own decisions, as well as in those of other States having constitutional provisions similar to the one under consideration, there has been some discussion as to what is meant by the term indebtedness as used in this article of the constitution. No good reason, however, has been advanced to show that the word in this connection should have any other than its ordinary signification; that is, the contraction of an obligation for which there is no present means of payment.

In the case of *Sackett · v. City of New Albany,* 88 Ind. 473, a case much like the one before us, it was said by this court: "By 'indebtedness', in this connection, we mean an agreement of some kind by the city to pay money where no suitable provision has been made for the prompt discharge of the obligation imposed by the agreement. It was obviously the intention of the Legislature in submitting, and of the people in adopt-

ing, the thirteenth article of the constitution, to arbitrarily restrict the power of municipal corporations to contract debts to a limited *per centum* of their taxable property, and to require, when that limit of indebtedness has been reached, that such corporations shall be prepared to pay for whatever of value they may obtain without incurrence of any further indebtedness for any purpose whatever. In this view the allegation of the complaint, that there was no money in the treasury of the city of New Albany which could be applied to the payment of the claim of the fire alarm telegraph company, was a material and pivotal allegation in this proceeding."

In the complaint in the case at bar there is no allegation that there was no money in the treasury of the city of Madison which could be applied to the payment of any obligation that might arise under the contract in favor of the fire alarm telegraph company. On the contrary, there are facts alleged in the complaint going to show that there was such money in the city treasury. The amount to be received from taxes during the current year was nearly $50,000, and city property was sold to the amount of over $1,600. The sum of $44,000 had been appropriated for various city purposes, $6,000 being for fire. Of the money appropriated, something less than $23,000 had been paid out, leaving over $28,000 unexpended at the time the contract was made. Of the $6,000 appropriated for fire purposes, the complaint does not state whether any part was expended. For anything that is said in the complaint, this $6,000 was lying in the treasury, to be expended for fire purposes as the common council might judge best.

Whether it was a wise thing and in the best interests of the city to take $5,000 out of the $6,000 appropri-

ated for fire, and use that $5,000 for the purchase of a
fire alarm telegraph system, was a question within the
discretion of the common council, and with which
the courts will not interfere.    *City of Valparaiso* v.
*Gardner*, 97 Ind. 1; *Coal Float* v. *City of Jef-
fersonville*, 112 Ind. 15; *Cleveland, etc., R. W. Co.* v.
*Harrington*, 131 Ind. 426; Dillon Munic. Corp., sec-
tions 308, 397; 10 Am. and Eng. Ency. of Law, 301.

The constitutions of Iowa, Illinois and Pennsylvania
contain provisions in regard to municipal indebtedness
quite similar to our own.    In the case of the *Appeal of
the City of Erie*, 91 Pa. St. 398, the court quotes with
approval from *Grant* v. *City of Davenport*, 36 Iowa
396, as follows : "Where a contract made by a munici-
pal corporation pertains to its ordinary expenses, and is,
together with other like expenses, within the limits of its
current revenues and such special taxes as it may
legally, and in good faith intends to, levy therefor, such
contract does not constitute 'the incurring of indebted-
ness, within the meaning of the constitutional provision
limiting the power of municipal corporations to contract
debts." Of this the Pennsylvania Supreme Court says :
"This, we hesitate not to say, is a sound constitutional
interpretation, and in a similar case might well be
adopted in the construction of our own constitution.
If the contracts and engagements of municipal corpora-
tions do not overreach their current revenues, no objec-
tion can lawfully be made to them, however great the
indebtedness of such municipalities may be; for in such
case their engagements do not extend beyond their
present means of payment, and so no debt is created."
*Appeal of the City of Erie, supra.*

In Illinois the ruling of the courts has adhered with
the utmost strictness to the words of the constitutional
inhibition, yet it is there held that a corporation which

has reached the constitutional limit of its power to create indebtedness, may, nevertheless, when a tax is levied, and even before the tax is collected, draw against the fund thus levied and provided; and the issuing of such a warrant upon the treasury is not the creation of a debt against the city, but the appropriation of a part of the fund to be collected. *City of Springfield* v. *Edwards*, 84 Ill. 626; *Law* v. *People, ex rel.*, 87 Ill. 385; *Fuller* v. *Heath*, 89 Ill. 296.

In the *City of Valparaiso* v. *Gardner*, already cited, this court, after citing and discussing many authorities, held that, while a debt may not be created, even for current expenses, if its effect will be to extend the corporate indebtedness beyond the constitutional limit; yet that the current revenues may be applied to the payment of the current expenses, even though the effect should be to postpone claims of judgment creditors or other obligations past due, and that when the current revenues are sufficient to fully pay the current expenses necessarily incurred to maintain corporate life, there cannot be said to be any debt thereby created. See also Dillon Munic. Corp., sections 135, 136, and notes.

There is a substantial agreement in these cases, that a municipal indebtedness is not created by contracting for something which the common council has determined is necessary for the welfare of the city, and agreeing to pay for it out of funds appropriated to that use and at the time in the city treasury, or provided for by taxes already levied.

The complaint in this case shows funds in the treasury of the city of Madison, provided for by taxation or otherwise, amounting to upwards of $50,000; that of this amount the sum of $44,000 is appropriated for the payment of interest upon the city indebtedness, and for other necessary purposes of the city, amongst which is

Brashear *et al. v.* The City of Madison *et al.*

the item, "fire, $6,000;" and that, at the date of the contract for the fire alarm telegraph, about $28,000 of these current revenues were unexpended. It does not appear from the complaint whether any part of the $6,000 appropriated for fire had been expended; nor does it appear whether any use had been made up to that time of the revenues over $44,000 which had not been expressly appropriated by the common council. As the city authorities judged it to be in the interests of the municipality to procure the fire alarm telegraph system as a part of the current expenses for fire protection, and as the amount thus to be expended was within the sum expressly appropriated for fire, we cannot see that the constitutional provision against municipal indebtedness beyond the prescribed limit has been violated.

Some question is made by counsel as to whether the proceedings of the Legislature in relation to the submission to the people of the article of the constitution limiting municipal legislation, were in all respects formal and correct. That article has now been in force and unquestioned by any one for over twelve years. If we may go back twelve years to consider such a question, why may we not go back forty years to the adoption of the constitution itself? It is not denied that the final action of each house preliminary to the submission of the article to the people was in every case duly authenticated by the proper officers, nor is any doubt expressed that the article when so submitted was sanctioned by the votes of a majority of the electors of the State. It is also to be remembered that it is the vote of the people, and not the action of the Legislature, that gives vitality to the constitution and its amendments.

We have not, however, found it necessary to the decision of this case that we should consider the ques-

tion so raised, and only thus refer to it in deference to the earnest argument of counsel.

We find no error in the record.

The judgment is affirmed.

Filed January 25, 1894.

NOTE.—The numerous and somewhat conflicting authorities as to what constitutes an indebtedness within the meaning of restrictions on municipal debts, are collected in a note to *Beard* v. *Hopkinsville* (Ky.), 23 L. R. A. 402.

## ON PETITION FOR REHEARING.

HACKNEY, C. J.—The appellants, with much earnestness and ability, have claimed a rehearing in this case, and we have given the questions involved a careful consideration. If our judgment of the propriety and wisdom of the expenditure proposed by the appellee were the proper guide to our conclusion upon the legal questions before us, the original opinion would have been with the appellants, and most certainly that judgment would lead us to grant the rehearing now asked. But, as said in that opinion, we are not permitted to judge of the wisdom or expediency of the expenditure, and if those whose servants are about to make the expenditure, are dissatisfied, they must resort to another, and not to a judicial tribunal. The chief contention of the appellants is that the court failed to distinguish between the ordinary current expenses of the city, and those for betterments or unusual purchases, and that, while current expenses may possibly be met, to the postponement of the debts of the city, contracted to the constitutional limit, such betterments may not be paid for from current revenues, where such debt limit has been reached. The theory of the original opinion is that to sustain the suit, the appellants were required to show that the

maximum debt limit, as prescribed by the constitution, had been reached, and that the city was about to create an additional debt, and that they had failed to so show this. This failure, it was held, was due to the fact that it was not proposed to create a debt, but simply to make a cash purchase, the city having in its treasury the funds with which to pay therefor. From this theory we are not inclined to depart, if the facts alleged support it, and, if it is supported, the distinction contended for is not for our consideration, since it would only arise where the effort sought to be restrained is the creation of a debt in excess of the constitutional limit. The original opinion shows very clearly and correctly, we think, that the city had current revenues sufficient to pay for the alarm system, and not create a debt for it. In fact, counsel call attention to the sale of personal property, by the city, for $3,000.00, not specially mentioned in the original opinion, which, together with the $1,618.00, for which real estate was sold, would require but a small fraction of the current expense appropriations, or other moneys not appropriated, to pay for the system, the revenues alone exceeding appropriations nearly $6,000. Appellants seek to avoid the inference that the city obtained and retained the purchase-price of the property sold. We regard it as the natural and necessary inference from the allegations of sales. It is also claimed that the court should not have indulged the presumption, in the absence of an allegation to the contrary, that sums appropriated had not been expended, and that, under the rules of pleading in such cases, it was not necessary to allege facts within the knowledge of the adversary. The true rule, as we understand it, is that facts peculiarly within the knowledge of the party against whom they should be pleaded, and not accessible

Brashear *et al. v.* The City of Madison *et al.*

to the pleader, may be dispensed with, but this may not be done without showing that such facts are so peculiarly within the knowledge of the opposite party, and not accessible to the pleader. If this were not the rule, a pleading, though a mere shadow, would be sufficient. Under our code, the burden rests upon the pleader to state in a plain and concise manner, the facts requiring the relief demanded, and to be excused from this duty, he must allege that such facts are beyond his reach, and not within his knowledge. It is a familiar rule that pleadings are to be construed most strongly against the pleader, and that if alleged conduct is reasonably susceptible of honest and lawful construction, that construction shall be given it. It was upon this rule that the appellants' complaint was construed in favor of the presumption that moneys were in the treasury unexpended, and that to remove such presumption, they should have alleged the contrary.

We have examined the cases cited by counsel, and have not been moved in our convictions, as expressed in the original opinion, and as confirmed by the recent cases of *Foland* v. *Town of Frankton*, 142 Ind. 546, and *Seward* v. *Town of Liberty*, 142 Ind. 551. Being entirely satisfied with the correctness of our conclusions, we cannot follow counsel in their very extended discussion. The petition for a rehearing is overruled.

Filed December 12, 1895.