MANSON v. SOUTH BOUND R. R. CO.

1. INJUNCTION — NUISANCE — PUBLIC MISCHIEF — MUNICIPALITIES — PARK.—Residents of a city whose premises do not abut on a public park and whose interest in its maintenance as such differs only in degree from that of the other residents of the city cannot maintain an action to enjoin its condemnation for and use as a railway station and terminal.

Before GARY, J., Richland, September, 1901. Reversed.

Action by Charles H. Manson, E. W. Robertson *et al.* against South Bound R. R. Co. and city of Columbia. The following is the Circuit decree:

"This case came before me for hearing on the pleadings, report of the master, with the testimony taken by him and exceptions thereto by the attorney for the South Bound Railroad Co., defendant. The land described in the complaint as Sidney Park was acquired by the city of Columbia in 1835. The city of Columbia established its waterworks in the lower part of this property and used so much of it as was necessary for that purpose until about 1855 or '57, at which time new springs were purchased and the waterworks removed to Richland and Williams streets, where they remained until removed to the river in the early seventies, at which latter place they are now maintained. After the removal of the waterworks from the park, the water from the springs therein was conveyed by pipes to a reservoir outside of the park used only as a supplementary supply to the river water. Before that time, however, to wit: about 1851 or 1852, the city council of Columbia, upon the suggestion of one of its members, Mr. Algernon Sidney Johnson, appropriated all of this property, not needed exclusively for its water supply purposes, to the use of the citizens of Columbia as a public park. The city, at its expense, improved and adorned the property, laid out walks and drives, erected fountains and arbors, planted trees, shrubberies, flowers and grass, built a driveway around it, and held it out to the public as a public

park, maintained a park keeper, regulated it by special ordinances and placed a sign over its gate, and published maps prepared by the city engineers upon which it was designated as 'Sidney Park;' and it continued to be thus maintained and held out without interruption and without question until the commencement of this action. During this period the plaintiffs, Manson and Robertson, purchased their property, the value of which was enhanced by reason of its situation on the park.

"Lands in or near a city condemned by the State under its power of eminent domain, or by a city under the same power delegated to it by the State, or property belonging to a city appropriated by it for the purposes of a public park, or conveyed by an individual to a city for such purposes and accepted by the city, thereby becomes a park, which as such is devoted to public use. The park in this case, 'Sidney Park,' had so been devoted to a public use by the city of Columbia for more than forty years, and thereby the citizens of Columbia acquired a right to its continued use as a park until taken away by the State under its power of eminent domain.   2 Dill Mun. Corp., 635, 636, 644, 645, 648, 664a and note, 637, 642; 9 Enc. Law (2 edit.), 23, 25, 61, 76; *Chicago* v. *Ward,* 169 Ill., 392; *Board of Supervisors Winchester,* 84 Va., 467; *Story* v. *R. R. Co.,* 90 N. Y., 122; *Illinois* v. *Ill. Cent. R. R.,* 154 U. S., 238; *Davenport* v. *Buffington,* 46 L. R. A., 380.

"But property held by a city as a public park for the use of all its citizens cannot be taken for any other public use without express legislative authority.   A railroad is a public use, but it cannot condemn property without legislative authority, and it cannot condemn for its uses property which has already been appropriated to some other public use unless there be express authority from the legislature to condemn that piece of property or all property devoted to like public uses, or unless the authority to take such property is a necessary implication from the terms of the charter without which the power to build the road would fail.   The authorities on this

point seem to be in full accord and fully sustain this position. Lewis on Em. Dom. (2 edit.), 175, 267, 267b, x and note 64, on page 632, 269, 272, 276; 3 Ell. R. R., 1104; 10 Enc. Law (2 edit.), 1093, 1095, 1100, 1110; 2 Dill. Mun. Corp., 597, 600; *St. Paul* v. *Chicago &c.*, 34 L. R. A., 188; *Prospect Park* v. *Williamson*, 91 N. Y., 552, 558; *Montgomery* v. *Douglass*, 43 L. R. A., 376; *Davenport* v. *Buffington*, 46 L. R. A., 377.

"Upon reference to the charter and amendatory charters of the defendant company, we find that they are given authority to build a railroad from a point within or near the limits of the city of Columbia to a point on the Savannah River, and to extend that road from the point within or near the limits of the city of Columbia to the northern boundary line between this State and North Carolina, and in the construction of such railroad to conduct it across or along any road or water course, and to condemn rights of way under the general laws of 1868. This act of 1888 is substantially the same as that now found in the Revised Statutes of 1893, vol. 1, sections 1743 *et seq.*, authorized lands to be condemned for railroad tracks, depots, etc., and gives the right of way over another right of way if not a hindrance to the use and enjoyment of the first, which proviso is also specifically stated in section 12 of the original charter; but in no act of the legislature is there any authority, special or general, which authorizes the South Bound Railroad Company to condemn for its use, lands then in public use as a public park. It cannot be successfully contended that the right to build a railroad from a point within or near the city of Columbia to the North Carolina line, gives the power by necessary implication to appropriate for its purposes this public park. See illustrations in note 64 of 2 Lewis Em. Dom., *supra.* The general law providing for the manner of acquiring rights of way is held by our Supreme Court, in *Ross* v. *R. R. Co.*, 33 S. C., 477, to provide only for the manner of obtaining compensation for the taking of the right of way, the right to take under the power of eminent domain

being conferred by the charter. I, therefore, hold that the South Bound Railroad Company, with or without the sanction of the city council of Columbia, had no authority to condemn Sidney Park for either right of way or station purposes.

"This case was instituted by the five plaintiffs named in the complaint, in behalf of themselves and all other citizens of Columbia who might come in and join them. The only plaintiffs now prosecuting this case before me are C. H. Manson and E. W. Robertson. Have these plaintiffs, Manson and Robertson, a right to maintain this action? It seems to me that they have. There is no evidence before me to show that there are any other dwellings overlooking this park. The residence owned by the plaintiff, Manson, is separated from the park only by a street or road of about sixty feet in width, which from the testimony seems to have been constructed as a part of the park. The residence of the plaintiff, Robertson, while separated from the park by this same road, also has intervening the width of Laurel street and a small triangular lot of open ground belonging to the city, but both houses seem to have the location upon bluffs that overlook this park, and that the value of their property, as shown by the uncontradicted testimony, will by reason for their location be specially and peculiarly injured by the destruction of this park and its conversion into a railroad station, which is an injury peculiar to them and differing in kind from the injury to other citizens whose property is not so located. 2 Lewis Em. Dom., 636a, 645b; *Riddlehuber* v. *R. R. Co.,* 33 S. C., 308; *Wilkins* v. *Gaffney,* 58 S. C., 199; *Douglass* v. *Montgomery,* 43 L. R. A., 476; *Davenport* v. *Buffington,* 46 L. R. A., 377; *Steamboat Company* v. *R. R. Co.,* 30 S. C., 545-6, and 46 S. C., 327; *Crouch* v. *R. R. Co.,* 21 S. C., 495. And that same applies in cases of injunction. See High Injunct., 522, 528.

"At the time of the commencement of this action the park had not been touched, condemnation proceedings had been commenced but not completed; now the park has been as

such entirely destroyed, the railroad is in full possession, and it would be impossible for the defendant to restore the park to its then condition.    The complaint asks for an injunction not only against the condemnation of the property but also against its use for railroad purposes.    I am satisfied that the damages sustained by the plaintiffs are such that they may be compensated in money, and, therefore, under the circumstances now existing, the injunction prayed for will be refused, 2 Lewis Em. Dom., 645a.    Nevertheless, the plaintiffs had a good cause of action for injunction when this action was instituted, and it is through no fault of theirs that the Court will not now grant them this injunction.    In such cases there being no claim for vindictive damages, a reference should be ordered to the master to ascertain the amount of damages sustained by these plaintiffs by reason of the acts done by the defendant without authority of law.    Kerr on Injunctions, 231 ; *Case* v. *Minot,* 158 Mass., 588, and 31 N. E. Rep., 702; *Bird* v. *R. R. Co.,* 8 Rich. Eq., 54; *Busbee* v. *Mitchell,* 29 S. C., 451 ; *Boulard* v. *Carpin, 27* S. C., 365; 2 Lewis Em. Dom., 645a; *Bath* v. *Langley,* 23 S. C., 145.

"It is, therefore, ordered, that it be referred to the master of Richland County to ascertain and report the amount of damage sustained by the plaintiffs, C. H. Manson and E. W. Robertson, by reason of the destruction of Sidney Park by the defendant company and its use thereof as a railroad station.

"It is further ordered, that the defendant's exceptions be overruled, and that the findings of the master be confirmed."

From this decree the defendant, South Bound Railroad Co., appealed.

*Messrs. Wm. H. Lyles* and *P. H. Nelson,* for appellant. The former cites : *Proof of use of park does not establish a dedication to public:* Elliott on Roads, secs. 137, 156, 162. *Property dedicated by use alone may be condemned for other public purposes:* Elliott on Roads, secs. 112, 115, 72, 73;

*McLauchlin* v. *R. R.*, 5 Rich.; 85 Ill., 33; 27 N. Y., 213; 7 Barb., 508; 8 Dana, 289; 13 Barb., 646; 21 Ill., 516; 29 Ill., 279; 3 Porter (Ind.), 425; 23 Pick., 360. *This action cannot be maintained by plaintiff:* 10 Ency. P. & P., 897, 900; 1 Neb., 329; 50 Ga., 451; Elliott on Roads, sec. 1647; 70 Tex., 366; 85 Ill., 232; 11 Gray, 26; 43 Ohio, 191; 7 Cush., 254; 29 L. R. A., 568; *McLauchlin* v. *R. R.*, 5 Rich., 30 S. C., 545; 48 S. C., 560. *Plaintiffs have no standing in Court as owners of abutting property:* 21 S. C., 221; 24 S. C., 27; 33 S. C., 482; 4 Mun. Corp., 42; 55 S. W. R., 104; 107 Mo., 192; 93 Mo., 408; 97 Mo., 85; 17 S. W. R., 743; 34 L. R. A., 769. *Plaintiffs cannot now obtain relief sought:* 10 Ency. P. & P., 1043, and notes. *Damages testified to by plaintiffs' witnesses cannot be considered in law:* 50 L. R. A., 814; 59 S. C., 579.

*Messrs. Allen J. Green, Robt. W. Shand,* and *Andrew Crawford,* contra. *Messrs. Shand* and *Green* cite: *What amounts to a dedication?* 2 Dill. Mun. Corp., secs. 635-6, 644, 648; 9 Ency., 2 ed., 23, 25, 52, 61, 62. *Whether city took land in trust or devoted its own land, it must hold it as a park:* 2 Dill. Mun Corp., 664a, note; 9 Ency., 2 ed., 32, note 3; 90 N. Y., 122; 154 U. S., 238; 46 L. R. A., 380; 84 Va., 467; 169 Ill., 392. *A public park cannot be condemned by railroad without special act of legislature:* Lewis on Em. Dom., secs. 175, 267, 269, 272; 10 Ency., 2 ed., 1093-95; 3 Elliott on R. R., sec. 1104; 17 Ency., 1 ed., 415, 417; Elliott on Streets and Roads, 167-169; 1 Wood Ry. Law, 681; 2 Dill. Mun. Corp., 597-600, 650, 769; 9 Ency., 2 ed., 77, 79; 6 L. R. A., 259; 34 L. R. A., 188; 7 B. Mon., 681; 90 N. Y., 157; 91 N. Y., 552; 43 L. R. A., 376; 46 L. R. A., 377; Mills Em. Dom., sec. 46. *No legislative authority was ever granted this defendant to condemn a park:* Con. 1895, art. I., sec. 17; art. VIII., sec. 4; art. IX., secs. 20, 21; Rev. Stats., 1743-1755; 17 Stat., 949; 14 Stat., 89; 20 Stat., 418, 763. *Plaintiffs may maintain this action in equity:* 6 L. R. A., 260-2; 2 Dill. Mun. Corp., secs. 661, 909-922; 38 N. J.

Eq., note 304; 43 L. R. A., 376; 46 L. R. A., 377; 2 Lewis Em. Dom., 636a, 645b; 33 S. C., 308; 58 S. C., 199; 30 S. C., 545; 46 S. C., 327; 21 S. C., 495; 58 S. C., 199; 60 S. C., 531. *Plaintiffs are entitled to injunction and damages:* 16 Ency., 2 ed., 362; 2 High. on Inj., 1701; Hill on Inj., 543, 290; Kerr Inj., 231; 36 N. J. Eq., 319; 158 Mass., 588; 32 N. E. R., 702; 8 Rich. Eq., 54; 2 Dill. Mun. Corp., 763; 29 S. C., 451; 29 S. C., 449; 27 S. C., 239. *Abandonment of appeal from order refusing temporary injunction does not estop us of our remedy:* 38 N. J. Eq., 304; 36 S. C., 174; 42 S. C., 79; Elliott on Appel. Prac., secs. 534-5.

April 25, 1902. The opinion of the Court was delivered by

MR. JUSTICE GARY. The appeal herein is from a decree of his Honor, the Circuit Judge, which will be set out in the report of the case.

The first question that will be considered is whether the plaintiffs, under the facts of the case, have the right to invoke the aid of the Court in the exercise of its chancery powers. The master, to whom the issues of fact were referred, made his report, in which he found the following facts:

"6. That the plaintiff, E. W. Robertson, is now and was before the commencement of this action a resident and tax-payer of the city of Columbia, and the owner of two acres of land situate at the corner of Assembly and Laurel streets, on the top of Haskell's or Taylor's Hill. That the said premises are separated from the park by Laurel street and by a triangular lot of land bounded by Laurel and Assembly streets, and is distant three or four hundred feet from the park, and 'overhangs' the park with an unobstructed view thereof, and its situation with reference to the park as it stood at the time of the commencement of this action materially enhanced its value, and the same were purchased by Judge Haskell, its former owner, and E. W. Robertson, one of the plaintiffs herein, with reference to the park, opened and maintained and labelled with a sign placed over its gates

by the city as a public park; and prior to the commencement of this action, while in that condition, the said plaintiff had commenced the erection of a residence on his said premsies, and had expended large sums of money ($12,000) for plans and materials in building the same, which said premises as a residence will be materially injured by the establishment of a railroad station in the park.

"7. That from the conformation of the ground, the house being on the top of the hill and the park in the valley, the house overhangs the park, and is peculiarly susceptible to the damage that would be caused by smoke, soot, dust and noise inseparable from a railroad yard and freight and passenger station.

"8. That the plaintiff, C. H. Manson, was at the time of the commencement of this action and is now a resident and taxpayer of the city of Columbia, and the owner of a residence at the corner of Gates and Laurel streets, abutting on the Palmetto road, which is the public road laid around the park; which said house is about sixty feet from said park enclosure and overlooks the park, and has an unobstructed view of and over the same, and was purchased by the said plaintiff with reference to the said park, and while the same was opened and maintained and labelled by a sign placed over its gates by the city as a public park."

It will thus be seen that neither E. W. Robertson nor C. H. Manson was an abutting landowner on the land designated as a park, nor that they have sustained injuries different in kind from those which might reasonably be expected would be suffered by those in the neighborhood, although differing in degree.

The question under consideration is so conclusively settled by the case of *Cherry* v. *Rock Hill,* 48 S. C., 553, that the Court might with propriety rest its decision on that authority. We will, however, cite others. The rule in such cases is thus stated in sections 1298 and 1301 of Hightower on Injunctions: "Sec. 1298. The question of the degree of interest in the subject-matter which is requisite to render one

a proper party plaintiff, to institute an action for the purpose of restraining misconduct on the part of municipal corporations or their officers, is one of much practical importance and deserving of special attention. In general it may be said that to warrant the interference of equity in this class of cases, the aggrieved party must show that some special and peculiar injury, personal to himself, is likely to result from the act complained of, aside from the general injury to the public. And while some conflict of authority exists as to what constitutes such special injury as will warrant a court of equity in interfering, the better doctrine is, that taxpayers of a municipal corporation, as a city or county whose burdens of taxation are increased by the misappropriation of public funds by municipal officers, or by other official misconduct on the part of such officers, sustain such special damage as to entitle them to relief. Thus, the enforcement of a city ordinance which is unconstitutional and void, and which seeks to impose a debt upon the city, may be enjoined by property owners and taxpayers of the city. So where a board of county commissioners are proceeding without authority of law to appropriate county funds in aid of the construction of a railway, a taxpayer of the county has such an interest in the public funds as enables him to maintain a bill for an injunction. And since the municipal government of a city or town is intrusted with the control and disposition of municipal affairs for the benefit and protection of its citizens and taxpayers, they are the proper parties to a bill for an injunction against the improper exercise of a municipal authority."

"Sec. 1301. Although the general doctrine that taxpayers are proper parties to invoke equitable relief against misconduct upon the part of municipal authorities, is thus seen to be well established, it is not to be understood that they are entitled to maintain an action in all cases of this nature, regardless of their personal interest, or of the degree of injury which they may sustain. And where, under a general power in a city charter to establish and regulate markets, the corpo-

rate authorities of the city are about to remove a market house, taxpayers, as such, have no sufficient ground for enjoining the removal, whatever may be the rights of adjacent proprietors and others injuriously affected thereby.   So a taxpayer in a city, who files a bill in behalf of himself and other taxpayers to enjoin the city from selling a public park or square, is not entitled to the relief when he has no land abutting upon the square, and when he has no private interest involved other than or different from the body of taxpayers."

In 10 Am. & Eng. Enc. of Pl. & Prac., 897-900, the general doctrine is thus announced: *"In Suits to Enjoin Public Mischief—*(1) *Private Individuals as Plaintiffs—Statement of the General Rule.*—It is settled by numerous authorities, English and American, that a suit for an injunction to restrain apprehended wrongs against the public cannot be maintained by a citizen on the ground that his interest and rights as a member of the State will be interfered with or disturbed, where the injuries which he apprehends are of the same kind as those which will be sustained by the people at large; and this rule has been rigidly adhered to in a great variety of cases, *e. g.,* suits to restrain public nuisances, purprestures, obstruction of highways, official delinquencies, and usurpations of corporate powers.   It has been held that it requires some individual interest distinct from that which belongs to every inhabitant of a municipal corporation, to give one of such inhabitants a standing in Court, where it is an alleged delinquency in the administration of public affairs which is called in question; and there are cases in which it has been maintained that the fact of owning taxable property is not such a peculiarity as to take the case out of the rule; as all property, with very limited exceptions, is taxable, and every one either has or is capable of acquiring property.   *The Reason for the Rule.*—The rule is not a technical and arbitrary one, but has a solid foundation of principle and is sustained by the very sound reasons of public policy, the object of the rule being to protect the defendant against a multiplicity of

9—64

suits and to secure him in one suit a final determination of all the controverted questions involved. *When Private Individuals may be Plaintiff.*—Although the rule is firmly established that a suit to enjoin public mischiefs of whatever character must in general be instituted by or on behalf of the sovereign of the State, it is equally well settled that a private individual is a proper party plaintiff where the injuries which he will sustain are special and particular, differing in kind and not merely in degree from those which the public at large will suffer." See, also, the case of *Baltzeger* v. *Ry. Co.,* 54 S. C., 242. From the foregoing authorities we are satisfied that the plaintiffs have failed to show such facts as entitle them to equitable relief.

Having reached this conclusion, all the questions presented by the defendant's exceptions become merely speculative and need not be considered.

The plaintiffs, E. W. Robertson and C. H. Manson, also appealed on the ground that his Honor erred in failing to enjoin perpetually the operation of trains and the maintenance of a station in Sidney Park. As hereinbefore stated, the plaintiffs under the facts of the case are not entitled to the equitable aid of the Court.

The plaintiffs also gave notice that they would ask this Court to sustain the decree of the Circuit Court on the additional grounds, to wit: That the city of Columbia held Sidney Park in trust for the use thereof as a public park by all of its citizens, who thereby had the right as *cestuis que trustent* to invoke the aid of the court of equity in behalf of themselves and other citizens of Columbia to enjoin a destruction of the trust and an interference with its full and free use. These additional grounds are disposed of by what was said in considering the other questions.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the complaint dismissed.

MR. JUSTICE POPE *concurs in the result.*