SPURRIER v. VATER ET AL.

[No. 9,183.  Filed October 3, 1916.]

1. MUNICIPAL CORPORATIONS.—*Public Parks.*—*Custody and Control.*—*Powers of Board of Public Works.*—*Statutes.*—Under §8747 Burns 1914, Acts 1905 p. 322, public parks in cities of the third and fourth classes are placed in the control and custody of the board of public works, which body is empowered by §8696 Burns 1914, Acts 1905 p. 278, to license the removal of gravel therefrom and to require a bond for damages occasioned by such work. p. 672.

2. NUISANCE.—*Public Nuisance.*—*Injunction by Private Person.*— Where, in an action instituted by a citizen of a municipality on behalf of the other taxpayers thereof to restrain the removal of gravel from a public park, the averments of the complaint show that the conditions resultant upon such work must be regarded as a nuisance which does not affect the plaintiff differently than the general public, he is not entitled to injunctive relief, since, in such a case, it is the general rule that equitable relief may not be invoked in the absence of a showing by the party aggrieved that he suffers a special and peculiar injury aside from that sustained by the public in general.  p. 673.

3. MUNICIPAL CORPORATIONS.—*Unauthorized Acts of Officers.*— *Injunction by Taxpayer.*—A single resident taxpayer of a municipal corporation may maintain an action to restrain the unauthorized acts of public officers, such as the illegal disposition of public property, even though his interest and the injury complained of are not different from that of the public in general within such city. p. 674.

4. MUNICIPAL CORPORATIONS.—*Taxpayer Action.*—*Complaint.*— *Sufficiency.*—In an action by a taxpayer of a municipality to restrain the removal of gravel and sand from a public park, a complaint alleging that the removal of the sand and gravel was unlawful and as a result thereof expenditure of public funds would be necessary to restore the park to its original condition is insufficient, in the absence of an averment that no bond for damages was required by the board of public works as provided by §8696, cl. 12, Burns 1914, Acts 1905 p. 278, to predicate an action on the theory that the action of the board in disposing of the gravel and sand was unauthorized and illegal, since there is a presumption that the board, in exercising its statutory authority to license the removal of sand and gravel from public grounds, discharged the duty imposed on it by the statute of requiring a bond to indemnify the city for damages occasioned by the work of excavation.  p. 676.

5. EVIDENCE.—*City Board of Public Works.*—*Official Acts.*—*Presumption.*—A city board of public works being charged with official

duties by statute, there is a presumption that such duties have been discharged in accordance with the requirements thereof. p. 676.

From Lake Superior Court; *Herbert S. Barr*, Special Judge.

Action by Frank Spurrier against William E. Vater and others. From a judgment for defendants, the plaintiff appeals. *Affirmed.*

*J. A. Gavit* and *R. C. Martin*, for appellant. *Peter Crumpacker* and *Fred Crumpacker*, for appellees.

MORAN, J.—Appellant unsuccessfully sought to enjoin the appellees from removing sand, gravel, and earth from a public park owned and controlled by the city of Whiting, Indiana. The question for review in this court is predicated upon the sustaining of appellees' demurrer to appellant's complaint.

It appears from the complaint that appellant is a taxpayer of the city of Whiting; that the city owns what is known as the Whiting Park, consisting of about twenty acres of real estate, which cost the city approximately $75,000, and, since becoming the owner thereof, it has expended in excess of $22,000 in improving the same, much of which was expended in the construction of piers and breakwaters along and adjacent to the shore of Lake Michigan, upon which the park abuts. Likewise a large amount of money has been expended in beautifying the park, in constructing driveways and planting shrubbery; that bath houses have been constructed and a bathing beach improved, and in many other ways the park has been made a place of recreation and a pleasure resort for the inhabitants of the city. When the suit was filed appellees with men and teams were engaged in

digging up and removing from the shore within the park sand and gravel, which belonged to the city by reason of its ownership of the park. In the process of removing the sand and gravel, excavations were made, leaving dangerous depressions in the shore line; and in the prosecution of the work driveways were constructed over and upon the park, straw and manure were thrown thereon, which gave forth a disagreeable odor and stench, to the great annoyance of appellant and the patrons of the park generally, and by reason thereof the park has become unsightly. By the removal of the sand and gravel the low-water mark of the lake in this locality is being extended, reducing the number of acres of the park; that in the future the depressions created by the removal of the sand and gravel will have to be filled by the city, which will impose a burden upon appellant and the other taxpayers of the city. That appellant and his family are accustomed to use the park and bathing beach frequently during the summer months, thus promoting their health and furnishing them a place of recreation and enjoyment. That the board of public works of the city of Whiting in its administrative capacity has authorized the removal of the sand and gravel and insists that it must permit appellees to remove and appropriate the same to their own use, and refuses to interfere with appellees in this behalf; that appellees have no right to do so; and that it becomes necessary for some resident taxpayer of the city of Whiting, and who is injuriously affected, to sue for the purpose of preventing the act complained of; that it is to the irreparable damage of the park, to appellant, and to the citizens of Whiting to permit the sand and gravel to be removed therefrom; that no adequate legal remedy exists, and resort

must be had to a court of equity. The suit was prosecuted on behalf of appellant and all other resident taxpayers, similarly situated, who reside within the city of Whiting. A permanent injunction was prayed. Upon these facts, which substantially cover the allegations of the complaint, is appellant entitled to injunctive relief?

The pleading discloses that the removal of sand and gravel was authorized by the board of public works; hence at the very threshold of our investigation we start with the basic principle 1. that it was within the authority of the board of public works to permit the removal of the same, as §8747 Burns 1914, Acts 1905 p. 322, provides that in cities of the class to which the city of Whiting belongs, "the board of public work shall have charge, control and management of all public parks and pleasure grounds belonging to any such city," etc. And by subdivision 12 of §8696 Burns 1914, Acts 1905 p. 278, the board of public works has power "to license the making of excavations in or the removal of coal, rock, gravel or other material from the surface or underneath the surface of any street, alley or public place of such city; and to require a bond for damages caused by such excavation," etc.

There being no fraud charged in the authorization of the removal of the sand and gravel mentioned in the complaint, and the board of public works having statutory authority, as we have seen, to authorize the removal, there is left for inquiry the condition created by the manner in which the sand and gravel was removed, and as to how the removal of the same will affect the taxpayers of the city of Whiting. The allegations of the complaint, which has to do with teams and wagons crossing over and upon the park, and the unsightly

condition created by the excavations and drive-
ways, and the odor and stench emitted from the
straw and manure strewn upon the ground, as
described in the complaint, is such as must be re-
garded in its nature as a nuisance, and, further,
it seems from the allegations of the complaint to
affect alike all the patrons who visit the park,
which is a public place. In other words, the un-
sightly appearance caused by the excavation and
driveways and the odor and stench, all alleged to
have been caused by appellees' conduct in the re-
moval of the sand and gravel, does not affect ap-
pellant in a special or peculiar manner different
from that of the public in general, and is an in-
vasion of the rights of the public. This being true,
appellant was not entitled to injunctive relief
2.   in this particular. It may be stated generally
that to warrant equitable interference the
aggrieved party must show that special and peculiar
injury personal to himself is occurring, or likely to
result from the act complained of, aside from the
injury suffered by the public. *City of Burlington*
v. *Stockwell* (1897), 5 Kan. App. 569, 47 Pac. 988;
*Manson* v. *South Bound R. Co.* (1901), 64 S. C.
120, 41 S. E. 832; *Bryant* v. *Logan* (1904), 56
W. Va. 141, 49 S. E. 21, 3 Ann. Cas. 1011; *Bancroft*
v. *Bancroft* (1905), 61 Atl. 689; *Landes* v. *Walls*
(1902), 160 Ind. 216, 66 N. E. 679; 22 Cyc 760;
*McCowan* v. *Whitesides* (1869), 31 Ind. 235.

It was held by the Supreme Court of West
Virginia in *Bryant v. Logan, supra,* that citizens
and taxpayers, stating no special harm differ-
ent from that of others, could not enjoin the
use of a lease, executed by the city for a part of a
city park for the purpose of training and racing
horses therein, and that, if the public use of the

park was impaired, the law afforded a remedy other than by injunction on the part of a taxpayer. So, if the theory of the complaint in the case at bar be regarded as seeking injunctive relief as against a nuisance, then we need not proceed further. Under the head of "Argument" in appellant's brief is the following: "The complaint in this case discloses the fact that the defendants were trespassing upon public property dedicated by the city of Whiting for park purposes." If this be regarded as charging appellant with the invasion of a public right, it is covered by what has been said heretofore and the conclusion there reached. However, under "Points and Authorities" appellant contends for a proposition, supported by a line of authorities, which affords a tax-payer relief from the unauthorized acts of public officers, and which is distinguishable from the line of authorities which deals with the question of a public nuisance. In *Meyer* v. *Town of Boonville* (1903), 162 Ind. 165, 70 N. E. 146, the principal is thus stated: "The principle, however, which obtains as to public nuisances, does not apply in this State to actions brought by a resident taxpayer of a municipal corporation to enjoin an illegal or wrongful act, or, if consummated, to have relief against it. In such cases it has been uniformly held that one or more resident taxpayers may maintain such actions upon a mere allegation that they were resident taxpayers of such municipal corporation, when it was apparent that their interest and the injury complained of were not different in kind from that of the public in general within such corporate limits, but were the same."

In *Davenport* v. *Buffington* (1899), 97 Fed. 234, 38 C. C. A. 453, 46 L. R. A. 377, Sanborn J., speaking for the court, announced the rule as fol-

lows: "Indeed, under the modern decisions, the general rule is that a resident taxpayer of a municipality has sufficient interest, and has the right to maintain a bill to prevent the unlawful disposition of the money or property of his town or city, to forbid the illegal creation of a debt or liability of his municipality, and to restrain the diversion of money or property in his town or city from any public use in which he shares to which it has been dedicated."

Appellant's position in this particular is not that the authorities are unlawfully disposing, or attempting to dispose of the park itself, but that the acts of appellant will, in the future, necessitate the expenditure of public funds on the part of the municipality. The allegation in the complaint most favorable to appellant in this respect is that the wrongful conduct of the board of public works in permitting the removal of the sand and gravel will necessitate the expenditure of funds to restore the park to its original state in the way of filling the excavations made by the removal of the sand and gravel. In support of this contention, the case of *Brockman* v. *City of Creston* (1890), 79 Iowa 587, 44 N. W. 822 is cited, which announces the rule as follows: "The foundation of the doctrine is the interference with the rights of the taxpayer in the increase of the burden of taxation, or the liability thereto, by misappropriating the property of the city, which may demand the levy of taxes to acquire other property in its place".

Should the allegation that funds will be required in the future to restore the park to its former condition, by reason of the excavation of the sand and gravel, be regarded as an allegation of fact and sufficient to bring appellant within the rule an-

nounced, the pleading would still be insufficient in this behalf, for the reason that the disposition of the sand and gravel is authorized by the board of public works and the statute, which empowers the board to so authorize, also provides for such contingencies, as here disclosed, by requiring a bond from the parties so removing the sand and gravel to indemnify the municipality against loss by reason thereof. While the complaint alleges the removal of the sand and gravel to be unlawful, and that it will in the future cast a burden upon the taxpayers of the city of Whiting, this does not overcome the absence of an allegation that no bond was executed, as the law presumes that the board followed the statute. The board of public works being charged with official duties, there is a presumption that it has and will discharge the duties imposed upon it and in accordance with the manner required by statute. *Brashear* v. *City of Madison* (1895), 142 Ind. 685, 36 N. E. 252, 42 N. E. 349, 33 L. R. A. 474.

After a careful consideration of the authorities in the light of the allegations of the complaint, we have reached the conclusion that the trial court did not err in sustaining the demurrer thereto. Judgment affirmed.

Note.—Reported in 113 N. E. 732. See under (2) 29 Cyc 1210; 17 Ann. Cas. 1128.