REGESTER *v.* LINCOLN OIL REFINING COMPANY ET AL.

[No. 14,371. Filed January 4, 1933.]

*Regester & Regester,* for appellant.

*Robert G. Miller, Blair & Rogers, Q. Austin East* and *Hays & Hays,* for appellees.

KIME, J.—The appellant, who was plaintiff below, brought an action as a taxpayer and citizen against appellees herein to prevent the taking over and use of a public street in the city of Bloomington, Indiana, and a part of the park system of said city for private use, to prevent the creation of an alleged dangerous and hazardous condition in said street and to collect damages.

The facts pertinent here and as set forth in appellant's complaint are substantially as follows: College Avenue, in the city of Bloomington, is a wide street with a raised grass plot in the center surrounded by a curb, a traveled concrete drive being on each side of said grass plot. Said College Avenue is one of the main public streets and highways entering the said city of Bloomington from the north, and through which the main part of the traffic leaves said city toward the north. Traffic on this street is extremely heavy and is continually on the increase. The Illinois Central Railroad has an overhead crossing on College Avenue in the form of a large, modern concrete railroad trestle with a pier in the middle of the street, the railroad embankment on each side of the street being some twenty or twenty-five feet high. Just north of the railroad right of way that company owns two lots facing west on College Avenue. It leased these lots to the Lincoln Oil Refining Company for the purpose of a public gas station. One Clovis Mitchell proceeded under contract to build this station. That before the beginning of this action plaintiff, as a citizen and taxpayer, demanded of the officers of the common council and the mayor that they stop or enjoin said Illinois Central Railroad Company and said Lincoln Oil Refining Company from tearing up and obstructing said street and creating the danger-

ous situation in said highway, but said city of Bloomington, through its common council, refused to take any action thereon and refused the request and demand of plaintiff to use any means whatever to stop or enjoin said railroad and oil company from committing such acts. The oil company and the contractor proceeded to build the gas station on the railroad company's lots fronting College Avenue and to take out the grass plot in the middle of the street in front of the station, level the same down and concrete it with the rest of the street and to build an entrance across the sidewalk into the oil station.

The plaintiff sought to enjoin the railroad company, the oil company, the contractor, Mitchell, the mayor, and the common council of the city of Bloomington from removing the curb and grass plot, and that a mandatory injunction issue compelling the defendants to restore the grass plot, curb, and said street to its original condition. Plaintiff also asked for five thousand dollars ($5,000.00) damages. It was charged against the officers of the city that they failed and refused to take action to prevent the injuries to the street after demand.

Appellant's complaint was in one paragraph, to which appellee, Illinois Central Railroad Company, filed its separate demurrer for want of facts, and afterwards all the other defendants (appellees herein) filed their joint and several demurrers, assigning the same statutory reason. These demurrers were all sustained, and, appellant having refused to plead further, judgment was rendered against him on his complaint. The rulings indicated are assigned as error and are relied upon for reversal.

Appellant, in his brief, asserts there are only two principal questions for this court to decide, viz.: "Does the complaint show an actionable wrong against the

public, and if so, may the plaintiff maintain such an action?" and calls our attention to the well settled rule that a demurrer to a complaint for want of facts admits that, for the purposes of the demurrer, all of the material allegations of the complaint are deemed to be true, so far as they are well pleaded. It is true that the demurrer does not admit conclusions of law, *Greathouse* v. *Board, etc.* (1926), 198 Ind. 95, 151 N. E. 411, but it has also been held by this court, in construing the act of 1913, Acts 1913, p. 850, as amended by the Acts of 1915, p. 123, §360 Burns 1926, that conclusions of fact stated in any pleading must be considered and held to be the allegation of all the facts required to sustain such conclusion if necessary to the sufficiency of the pleading, and that the only remedy afforded the opposite party by the act, as against any such conclusion, and to ascertain the facts upon which the pleader bases it, is by motion to make more specific. *Ohio Township* v. *Lipking* (1930), 91 Ind. App. 277, 171 N. E. 224; *S. W. Little Coal Co.* v. *O'Brien, Admx.* (1916), 63 Ind. App. 504, 113 N. E. 465, 114 N. E. 96. It is appellees' contention that such averments and conclusions as to their acts being "unlawful," "without right," and "creating a dangerous and hazardous place" add nothing to the complaint. Such expressions as "wrongfully, unlawfully, arbitrarily, void, illegal," etc., are expressions of the opinion of the pleader as to the legality of the act so characterized, and cannot be considered in determining the sufficiency of the facts alleged in a complaint when a demurrer has been imposed for want of facts, *Greathouse* v. *Board, supra,* but we think that words such as "dangerous, hazardous, perilous and unsafe" are conclusions of fact and must be considered when such conclusions are necessary to the sufficiency of the pleadings that are affected thereby. The complaint alleges

and appellees, by their demurrer, specifically admit that the street in question has become of great importance and that traffic has heavily increased; that the defendant Illinois Central Railroad Company is the *owner* and *controller* of the lots in question, which the defendant oil company had leased and upon which they proposed to build the filling station; that the defendant oil company has taken possession of said property and *is now tearing out and destroying one of the miniature parks or tree plots in the middle of said College Avenue* and directly in front of said lots numbers 95 and 96; that said oil company is doing all this without right or authority and are taking possession of that part of said public highway for their own private use, and are taking and destroying part of the park system of the city of Bloomington, Indiana; that said construction work, when completed, will create a dangerous and hazardous situation for traffic along said street, all to the damage of plaintiff and all of the citizens and taxpayers of the city of Bloomington, Indiana. It is true the ▉▉ complaint contains some general statements by way of conclusion, but such general averments are controlled by the specific averments on which they rest. Under the present liberal rules of pleading, it is our opinion that the complaint states a good cause of action, for the demurrer admits, not only the facts directly and specifically alleged in the complaint, but also all facts that can be implied from other allegations by reasonable and fair intendment. *Domestic Block Coal Co.* v. *De Armey* (1913), 179 Ind. 592, 100 N. E. 675, 102 N. E. 99; *Vandalia Coal Co.* v. *Coakley* (1916), 184 Ind. 661, 111 N. E. 426.

Appellees, in their demurrer, question the right of appellant to maintain an action for injunction, asserting that the complaint does not show that the plaintiff

has suffered any special or peculiar injury. As previously pointed out, the complaint alleges that the defendants, railroad company and oil company, will create at said designated place a dangerous and hazardous place for the traveling public, and proceeds to enumerate the reasons therefor. The situation that would arise upon the completion of the above contemplated acts as alleged in the complaint must be regarded and would be in effect a nuisance of such a nature as to affect the public in general. This being true, appellant was not entitled to injunctive relief in this particular or to recover damages. It is the general rule as to nuisance cases that to warrant equitable interference the aggrieved party must show that special and peculiar injury personal to himself is occurring, or likely to result from the act complained of, aside from the injury suffered by the public. *Spurrier* v. *Vater* (1916), 62 Ind. App. 669, 113 N. E. 732, 734; *Landes* v. *Walls* (1903), 160 Ind. 216, 66 N. E. 679; *McCowan* v. *Whitesides* (1869), 31 Ind. 235; *Mitchell* v. *City of Peru* (1904), 163 Ind. 17, 71 N. E. 132; *Eads* v. *Kumley* (1918), 67 Ind. App. 361, 119 N. E. 219.

There is, however, a long line of decisions which hold that the above rules as applied to nuisances does not apply in this state to actions brought by a resident taxpayer of a municipal corporation to enjoin an illegal or wrongful act, or, if consummated, to have relief against it. In such cases it has been uniformly held that one or more resident taxpayers may maintain such actions upon a mere allegation that they were resident taxpayers of such municipal corporation, when it was apparent that their interest and the injury complained of were not different in kind from that of the public in general within such corpo-

rate limits, but were the same. *Meyer* v. *Town of Boonville* (1904), 162 Ind. 165, 70 N. E. 146, and cases there cited.

On the other hand we have a situation wherein appellant alleges in his complaint that the defendants, railroad and oil companies, are taking possession of the street and grass plots, and are doing it without right or authority for their own private use. In *Spurrier* v. *Vater, supra,* the court quoted the following language of Sanborn, J., in the case of *Davenport* v. *Buffington* (1899), 97 Fed. 234, 38 C. C. A. 453, 46 L. R. A. 377 (which latter case is cited and relied on by appellant) : "Indeed, under the modern decisions, the general rule is that a resident taxpayer of a municipality has sufficient interest and has the right to maintain a bill to prevent the unlawful disposition of the money or property of his town or city, to forbid the illegal creation of a debt or liability of his municipality, and to restrain the diversion of money or property in his town or city from any public use in which he shares to which it has been dedicated." Continuing they say, "Appellants' position in this particular is not that the authorities are unlawfully disposing or attempting to dispose of the park itself." Thérein lies the distinction of the case at bar. Here the appellant alleges that the city council has refused to take any action to prevent such unwarranted disposition. Clearly the rule in the Buffington case, *supra,* applies. We do not question that the owner of land abutting on a street has a natural right to free an unobstructed ingress and egress to his property, and if the business of such abutting landowner is such that it requires the lowering or cutting away of the curb for the purpose of constructing a driveway so as to permit free access to and from his property, such owner cannot be prevented or restrained from so doing. However, as respects the grass

plot or so-called miniature park in the center of the street, a different situation arises. Appellees urge that the city is required to keep its streets free from obstructions and reasonably safe for travel, and that if the city determined it was expedient to remove the grass plot in the center of the street and surface the entire width of the thoroughfare, it was within the statutory power of the city so to do, and cite authorities in support of this contention. We do not question the correctness of this assertion, but it seems clearly apparent from the pleadings in the case at bar that the removal of the grass plot was purely for the benefit of the oil company and the furtherance of its business. True, the public at large has the privilege of using the space which was cut through the grass plot, but it was without a doubt constructed primarily for the convenience and benefit of the oil company and its customers, and the use accorded the public in general was merely incidental. We believe that where the destruction, conversion or taking of public property that has been created and beautified for the benefit of the public at large is concerned, the courts should lend their aid to the citizens and taxpayers of a community, so far as may be expedient in each particular instance, to prevent such destruction, conversion, or taking. By this we do not wish to convey the impression that authorities are to be so harsh in their judgment to the extent that their actions would tend to crush out a legitimate enterprise, but we do believe that they should exercise their discretion in such matters to the end that public parks, boulevards, miniature parks, etc., should not be destroyed or mutilated or converted for the primary purpose of assisting a private enterprise in the furtherance of its business, especially in cases where the abutting property owner has means of access to and from his

property without resorting to such measures. Public parks and places of scenic beauty are set apart and maintained by cities as places conducive to the health, pleasure, comfort, and amusement of the public. An enjoyment of fresh air and sunshine, and also the grass, flowers and trees, is most important in securing the social, physical, and moral well being of the people, and parks, as a means of providing these bounties of nature for all the people, have come to be considered as essentially necessary. *General Outdoor Advertising Co.* v. *City of Indianapolis* (1930), 202 Ind. 85, 172 N. E. 309, 72 A. L. R. 453, 46 C. J. 1373, 20 R. C. L. 637. In view of the above, it is our opinion that appellant's complaint states a good cause of action as to all parties except the Illinois Central Railroad Company.

The judgment of the Monroe Circuit Court is hereby reversed, with instructions to overrule the demurrers to the complaint of all the parties, except the Illinois Central Railroad Company. The judgment of the court sustaining the demurrer of the Illinois Central Railroad Company is hereby affirmed.