Pearson, J.
 

 There is error in the charge upon the subject of license. ITis Honor, was of opinion that a license to commit the alleged trespass might be presumed from “ common custom and consent.” This language is general and indefinite. By reference to the evidence, we find it was proven that there was “ a common custom and consent,” in pursuance of which, every person, who felt so inclined, fished in such mill-ponds and places without let or hindrance on the part of the owners. His Honor-left it to the jury, upon this evidence, to find that the plaintiff had given to the defendants permission to fish in his pond. There is no evidence that the pax-ties had ever seen each other; so an express license is out of the question ; and the point is, can a license be implied from a common custom, or common usage.
 

 It may be well, for the purpose of having some precision and certainty in our investigation, to recur to the form of the plea of license. In' trespass
 
 vi et armis,
 
 it must be pleaded
 
 *334
 
 specially. The form is given in 3 Ch. Pl. 1107: “ In further plea, &c.; because he says that he, the said defendant, at the time when, &e., by leave and license of the said plaintiff, to him for that purpose, first given and granted, to wit, at, &c., aforesaid, committed the said supposed trespasses in the said declaration mentioned.”
 

 When one, by a signboard, or otherwise, causes it to be known to all whom it may concern, that he is the keeper of a common inn, or shop for the sale of goods, and, in pursuance of this general invitation, an individual enters, if sued for doing so, his allegation that he committed the supposed trespass by leave and license of the plaintiff, “ for that purpose first given and granted,” is made out by proving that the plaintiff was a common inn, or shop-keeper. So, when when one is in the habit of permitting another to visit his house, if the latter should be sued for afterwards entering the house, license to do so may be presumed from the previous relations and acts of the parties, in the same way that agendy is presumed from the fact, that one is in the habit of allowing his wife to take up goods at a store on credit, or of sending his servant with a verbal order for goods, which he afterwards pays for.
 

 But that a defendant, in an action of trespass, can, as was insisted upon in the argument here, make out a plea of license to enter the
 
 locus in quo,
 
 and commit the supposed trespass by proving that this, being a “ free country,” everybody takes the liberty of going upon private property, and fishing in millponds, and that the owners either do not care about it, or do not usually think it worth while to take the trouble necessary to put a stop to it, is a new idea, not to be met with in any of the cases, and wholly inconsistent with the right of private citizens to the exclusive enjoyment of their property.
 

 The right to an easement may be acquired by prescription ; it is based upon the presumption of a grant, and in order to establish it, there must be a person capable of making a grant —a thing capable of being granted, and a person capable of taking by grant. The right of entering upon private proper
 
 *335
 
 ty, may be acquired by the license of the owner, and in order to establish it, there must be a person capable of giving it — a thing permitted to be done, and a person to whom the license may be given; but certainty of person is as necessary to give effect to a license, as it is to a title by prescription. An indefinite number of persons, viz., “ everybody,” are not capable of taking by grant; neither are they capable of accepting a license. The case of an inn-keeper, shop-keeper, and the like, who
 
 xmdertaTce to serve the public,
 
 is an exception, and is put on the ground that, after an individual enters, the
 
 generality,
 
 in regard to the persons to whom license is offered, is made particular by the act of accepting and acting under it. But this exception has no application to property reserved for the private use of the owner.'
 

 The departure from the general rule, requiring certainty in respect to the person to whom á.license is given, is made on reasons of public policy, for the encouragement of trade, &c.; hence the license in such cases is said to be given by law, as distinguished from a license given by the
 
 party,
 
 and for the protection of persons serving the- public, because it cannot be known before hand what mahner of person the customer may be. As. the law gives the license, it makes a party abusing such license, a trespasser
 
 ab initio. Six Carpenters’ case,
 
 8th Rep. 146.
 

 This suggests a further difficulty. The license pleaded must be co-extensive with the trespass.' Now it is clear that the cutting of the sill does not come under the license to be presumed from common usage. So, for this excess, the plaintiff had a right to treat the defendants as trespassers
 
 ab initio,
 
 if the license is treated as given by law ; or to take advantage of it by a new
 
 assignment,
 
 if it be treated as a license given by the party.
 
 Six Carpenters’ case, ubi supra;
 
 the plaintiff being at liberty to consider the pleading thus remodeled by the imderstanding of the profession.
 

 Pressed by these considerations, the very learned counsel for the defendants abandoned his special plea of “ license,” and insisted that, under the “ general issue,” or by remodeling
 
 *336
 
 bis plea, he could have the benefit of the custom, or common usage, of which there was evidence. Custom differs from prescription in this ; it is confined to particular places; and to meet the objection, the- counsel suggested that his plea, as remodled, alleged a custom in the County of Wake for every person, who was so inclined, to fish at seasonable times in the mill-ponds there situate. The custom proven was not confined to the County of Wake, but was general, and instead of a
 
 special
 
 custom, if it has any etfieacy, it is entitled to the dignity of a
 
 common
 
 custom ; and thus becomes a part of the common law. Waving this objection: “ The law of the State is composed of the statutes, and all such parts of the common, law as were heretofore in force, and in use, within this State, or so much of the said common law, as is not distinctive of, or repugnant to, or inconsistent with, the freedom and independence of this State, and the form of government therein established.” Rev. Code.
 

 We did not import from the mother country any of the “ special customs,” which, in particular localities, are allowed to supercede the common law. All legislative power is vested in our General Assembly. We can recognise no other law-making power, and there is no intimation to be met with in any of our decisions, that special customs can grow up among us, whereby rights may be- affected, or the common law be in anywise- changed. By the common law an immag-inary line is thrown around the land of every one, which may not be entered without subjecting the wrong-doer to an action. No custom- or usage can change- this law.
 

 If the owner of land unreasonably -refuses to allow his neighbors to fish in his mill-pond, or to gather strawberries in his old-field, the only correction is to arraign him at the bar of public opinion, for the violation of the rules of good neigh-borship.
 

 As the case is to be tried again, it may be proper to remark that, although the charge in reference to cutting the sill is correct in the abstract, yet it was the province of the Judge to instruct the jury what amounts, in law, to aiding and abet
 
 *337
 
 ting. The want of particular instructions upon this subject is the only supposition by which we can account for the fact that the jury found in favor of the defendants, Blake and Sorrel, and made Fowler the
 
 secope-goat.
 
 The sill was cut in their presence, in order to fish more conveniently ; the defendant, Blake, actually assisted in fishing, and the defendant, Sorrell, took the fish and carried them away. This amounted, in law, to aiding and abetting, and they ought to have been put on the same footing with Eowler.
 
 Horton
 
 v. Hensley, 1 Ire. R. 163.
 

 PeR Cueiam. • Judgment reversed, and a
 
 venire de novo.