THE AURORA AND CINCINNATI R. R. CO. ET AL. *v.* THE CITY OF LAWRENCEBURGH.

RAILROAD.—*Statute Construed.*—The act of June 18th, 1852, (1 R. S. 1876, p. 711,) supplemental to the act of May 11th, 1852, (1 R. S. 1876, p. 696,) providing "for the incorporation of railroad companies," in so far as it forbids railroad companies organized under the latter act from crossing or intersecting railroads terminating in cities of the class specified in its first section, at certain points, is special in its character and against public policy, and should be construed so as not to apply to a railroad

of the latter class, which, under the provisions of the act of February 21st, 1863, (1 R. S. 1876, p. 723,) authorizing "railroads to make extensions," etc., has since so extended its road as to carry its terminus beyond the corporate limits of the city within which it had theretofore been.

SAME.—*Power of Company.*—*Aiding Another.*—Where such railroad company has so extended its road, it may not only consent to, but aid in, the construction of a railroad by another company, crossing or intersecting the road of the former, at a point prohibited by such supplemental act

SAME.—*Organization.*—*Validity can not be Attacked Collaterally.*—The validity of the organization of a railroad company, legal upon its face, can not be questioned collaterally.

SAME.—*Injunction.*—*Illegal Intention.*—The fact that a company, lawfully organized to construct a certain specified line of railroad, fraudulently intends to build but part of such line, is no ground for enjoining the construction of that part.

SAME.—*Quo Warranto.*—The pendency of a proceeding by a prosecuting attorney, in the nature of a *quo warranto*, against a railroad company, to procure the forfeiture of its franchises on the ground that it has been organized to do an illegal act, can not affect or delay the decision in a prior proceeding to enjoin such company from further prosecuting the purpose for which it has been organized.

From the Ohio Circuit Court.

*O. B. Liddell, C. Baker, O. B. Hord, A. W. Hendricks* and *Hoadley, Johnson & Colston,* for appellants.

*J. Schwartz, J. D. Haynes* and *J. K. Thompson,* for appellee.

PERKINS, C. J.—Complaint by the appellee, against the appellants, for an injunction upon the construction of the Aurora and Cincinnati Railroad. A temporary injunction was granted. The appellants answered under oath, in denial of the complaint, and affirmatively showing what they had severally done, and what they intended to do.

On these answers, the appellants moved for a dissolution of the temporary injunction. The appellee filed affidavits in opposition to the motion. The motion was overruled, and an appeal taken to this court.

The pleadings are too lengthy to be copied into this

VOL. LVI.—6

opinion. We will endeavor, in lieu of them, to give an accurate statement of the facts alleged in them.

In 1850, the Lawrenceburgh and Upper Mississippi Railroad Company existed under a special charter, in which its southern terminus was fixed at Lawrenceburgh, in Dearborn county, Indiana, on the Ohio river. It does not appear that that terminus was fixed at Lawrenceburgh on a contract, upon consideration paid, that might render it immovable by legislative act. In 1853, on the 11th of May, our general railroad law came into force. 1 R. S. 1876, p. 696.

That law (section 21) authorized any railroad company to change a location made, when it might "appear to the directors of such company that the line thereof" might be improved by the change. On the 18th of June, 1852, (1 R. S. 1876, p. 711,) the following act, supplemental to the general railroad act, was passed:

"Section 1. *Be it enacted by the General Assembly of the State of Indiana,* That nothing in said act shall be construed to grant the power to any railroad company that may be organized under the provisions of this act, to cross or intersect any railroad now in course of construction, within four miles of its terminus, where such terminus is within the corporate limits of a city in this State, situate on a navigable stream, within two miles of the boundary lines of the two adjoining States, except within the corporate limits of such city.

"Sec. 2. The provisions of this act shall not be so construed as to affect in any manner, whatever, the construction of any railroad by any company at any time heretofore incorporated under any act of incorporation passed by the General Assembly of the State of Indiana, upon the route designated in the act of incorporation, or in any wise to impair the rights of such company, or to prevent or hinder the construction of any railroad having both the terminations thereof within the limits of this State, and not forming a regular connection with a rail-

road leading directly to some city situate upon the Ohio river beyond the limits of the State."

Prior to 1863, the name of the Lawrenceburgh and Upper Mississippi Railroad Company was changed to that of the Indianapolis and Cincinnati Railroad Company, with its original southern terminus at Lawrenceburgh, and its northern terminus at Indianapolis. On the 27th day of February, 1863, said company accepted, as an amendment to its charter, the act of the Legislature of the 21st of February, 1863, entitled "An act authorizing railroads to make extensions or branches in certain cases, and to take stock in railroad or other bridges." 1 R. S. 1876, p. 723. We copy the act:

" SECTION 1. *Be it enacted by the General Assembly of the State of Indiana,* That it shall be lawful for any railroad company in this State, organized under the general or special laws of this State, to make branches or extensions of its railroad to the boundary line of any county in which such road may have a terminus, such boundary line being also a boundary line of the State, and such railroad company shall have all the powers, rights and privileges in relation to such branches or extensions as it has or may have in relation to its original road, under the law by which it was organized, and in conformity to the law of its organization, with power to said company to subscribe and take stock in any railroad bridge company on the route of said road, or at the terminus of said railroad, for the use and benefit of said road : *Provided,* That any such bridge at the terminus of said road shall be so constructed as to admit the passage of vehicles, foot-passengers, and for general purposes.

" SEC. 2. It is hereby declared that an emergency exists for the immediate taking effect of this act, therefore be it enacted that this act shall take effect and be in force from and after its passage."

This act authorized the Indianapolis and Cincinnati, successor, as we have seen, to the Lawrenceburgh and

Upper Mississippi, Railroad Company, to extend its line, from its then southern terminus, to the eastern boundary line of Dearborn county, which, in the year 1863, it proceeded to do.

In 1853, a law was passed authorizing railroads to consolidate. 1 R. S. 1876, p. 717.

In the year 1867, the Indianapolis and Cincinnati Railroad and the Lafayette and Indianapolis Railroad were consolidated, forming a line of road from Lafayette, through Lawrenceburgh, to the Ohio state line, at a point not within the city of Lawrenceburgh, owned by the Indianapolis, Cincinnati and Lafayette Railroad Company.

On the 16th of December, 1875, articles of organization of the Aurora and Cincinnati Railroad Company were filed in the office of the Secretary of State of the State of Indiana, showing the regular organization of the corporation, under the general railroad law of 1852, with a capital stock of fifty thousand dollars, for the building of a road nine miles in length, extending from Aurora, through the county of Dearborn, to its eastern boundary, on the State line of the State of Ohio, at a point on said line where the Indianapolis, Cincinnati and Lafayette Railroad intersects said boundary line between the States of Ohio and Indiana, and crossing the line of the latter road, between Indianapolis and Lawrenceburgh, at a point within four miles of the latter city.

On the 14th day of March, 1876, the State, on the relation of the Prosecuting Attorney of the seventh judicial circuit of the State of Indiana, filed an information against said Aurora and Cincinnati Railroad Company, demanding the forfeiture of its franchises.

This suit, for an injunction upon the construction of said Aurora and Cincinnati Railroad, was commenced on the 9th day of March, 1876.

The complaint for injunction is, as appears, against two

railroad companies, viz.: The Aurora and Cincinnati, and the Indianapolis, Cincinnati and Lafayette.

The charges in it against the former are, substantially, that it is a fraudulent corporation, organized to do an illegal act, viz.: To construct a railroad, crossing the Indianapolis, Cincinnati and Lafayette railroad, within four miles of Lawrenceburgh; and the charge, in gross, against the latter company is, that it is aiding the former, by furnishing material and money, to accomplish its unlawful undertaking; and this, in order that the latter company may obtain, by arrangement with the former, the right to use, in common with the former, a part of its road. Is the object for which the Aurora and Cincinnati Railroad Company is organized to accomplish an illegal one?

The answer to this involves another question, viz.: Does the first section of the act of June 18th, 1852, operate upon the Aurora and Cincinnati Railroad Company, organized in 1875? We requote that section:

" That nothing in said act shall be construed to grant the power to any railroad company that may be organized under the provisions of this act, to cross or intersect any railroad now in course of construction, within four miles of its terminus, where such terminus is within the corporate limits of a city in this State, situate on a navigable stream, within two miles of the boundary lines of the two adjoining States, except within the corporate limits of such city."

It should be observed at the outset, with reference to this section, that it is in the nature of special legislation, for the benefit of certain localities at the expense of the general public, restrictive of the freedom of transportation, burdensome to commerce, against public policy, and should not, therefore, receive a strained construction, to make it uphold erroneous principles. Construction has ever been a potent agency in harmonizing the operation of statutes, with equity and justice.

In 1852, when the section was enacted, the terminus of

what is now known as the Indianapolis, Cincinnati and Lafayette Railroad was at Lawrenceburgh, and the object of the above section, passed upon the supposition that the terminus of that road would perpetually remain at that point, was to compel re-shipment at Lawrenceburgh. But the terminus of said road did not continue at Lawrenceburgh; and when that terminus was changed, by virtue of a later law of the State, it was done, clearly, upon an abandonment by the State of the purpose for which, and the policy upon which, that restrictive section was enacted. And when the Aurora and Cincinnati Railroad Company was organized, in 1875, no railroad which that road proposed to cross had its terminus at Lawrenceburgh.

We think such is the construction that should be given to the restrictive section of the act of June 18th, 1852, above quoted. We do not think it should be construed to apply to a road that had its terminus at Lawrenceburgh in 1852, but which had since, by legal permission, abandoned that point as a terminus.

The act of 1863, above set out, and which was adopted as a part of the charter of the Indianapolis and Cincinnati Railroad Company, authorized "Any railroad company in this State, organized under the general or special laws of this State," to make extensions, etc. And when the Indianapolis, Cincinnati and Lafayette Railroad Company extended its road to the Ohio line, that placed its southern terminus outside of the city of Lawrenceburgh, and, in our opinion, took its road out of the operation of the 1st section of the act of the 18th of June, 1852. It will be observed that the Indianapolis, Cincinnati and Lafayette Railroad Company does not object to the crossing of its road by the road of the Aurora and Cincinnati Railroad Company. That company waives the protection of the act of June 18th, 1852, if it should be held in force.

The object for which the Aurora and Cincinnati Railroad Company is organized is a legal one. This being so,

it is lawful for the Indianapolis, Cincinnati and Lafayette Railroad Company to aid that corporation with materials and money, with a view to a common running arrangement in the future. The 1st section of the act on this subject, passed in 1873, (1 R. S. 1876, p. 714,) enacts:

"That all railroad companies now organized, or that may be hereafter organized under the laws of this State, having connecting roads, may enter into contracts by their respective boards of directors, by which the locomotives and trains of one railroad company, for the transportation of freight and passengers, may be run and operated over and upon the track and road of another railroad company, upon such terms as the said companies may agree upon."

One company may pay in advance for subsequent use of a road, and thus aid in building it.

But it is urged that the organization of the Aurora and Cincinnati Company is illegal and a sham. Its organization, on its face, conforms to the statute. The validity of such organizations can not be attacked collaterally. *Brookville, etc., Turnpike Co.* v. *McCarty,* 8 Ind. 392.

It is further insisted that said company does not intend to build but a part of its line. In due season it may change its mind; should it fail to do so, it will then be time to look for a remedy. Present intention to omit a future duty is not, in this case, ground for present judicial action. *The State, ex rel., etc.,* v. *Kingan,* 51 Ind. 142.

One of the grounds upon which we are asked to affirm the judgment granting the temporary injunction is, the pendency of the information in the nature of a *quo warranto* to dissolve the corporation. We see nothing justifying the granting of the temporary injunction on that ground; and time enough has intervened since the injunction was granted in this, for the trial of that, cause. We see nothing that would justify this court in prolonging the existence of the temporary injunction.

We think the court erred in overruling the motion to dissolve that injunction.

The judgment below is reversed, with costs; cause remanded for further proceedings in accordance with this opinion.