MILLSPAUGH, ADMINISTRATOR *v.* NORTHERN INDIANA PUBLIC SERVICE COMPANY.

[No. 15,739. Filed January 25, 1938.]

*Faust & Faust* and *Julias V. Medias,* for appellant.

*Carr & Love,* for appellee.

WOOD, J.—The appellant brought suit against the appellee by an amended complaint, referred to hereafter

as complaint, in one paragraph to recover damages alleged to have been sustained because of the death of one Ralph M. Millspaugh as the result of negligent conduct on the part of appellee.

Appellee demurred to the complaint for insufficiency of facts. This demurrer was sustained. Appellant refused to plead further and judgment was rendered against her that she take nothing by her action. From this judgment appellant appeals assigning as the only error for reversal the action of the court in sustaining appellee's demurrer to her complaint.

The complaint, omitting the caption, the allegations concerning the survival of dependents of the decedent, the prayer for judgment, and signature of attorneys, is in the following language:

"The plaintiff complains of the defendant and for her amended cause of action alleges:

"That the defendant is now and was at all times as hereinafter set forth a corporation engaged in the business of manufacturing, generating and selling electricity, and as a part of its business, constructed dams across rivers for the purpose of obtaining water power to operate its machinery for generating electric current, and which current after so manufactured and generated was sold by it to the general public, and as a part of its business, operated a power plant near the town of Monticello, in White County, Indiana, under the firm name and style of Northern Indiana Public Service Company.

"That for a time, the memory of man runneth not to the contrary, there was a public river running North and South through said White County known as the Tippecanoe River and which has been for many, many years and which was at the time hereinafter mentioned, heavily stocked with fish; that the town of Monticello has been built along its banks, which said banks and river at the place and point where plaintiff's intestate

was fishing as hereinafter set out, have been for a long period of time and were at the time of the drowning of plaintiff's intestate as hereinafter alleged, subject altogether to a public easement and to the right of the public to come upon said banks and river, among other things, for the purpose of boating and fishing; and running in both directions along the banks of said river numerous cottages have been constructed and for many years have been occupied by persons desiring to make their summer homes therein; that for many years said river was used by the occupants of said cottages and others, for fishing, and as a means of catching fish from said river, boats were used thereon.

"That more than seven (7) years ago, and prior to the 8th day of April, 1933, a dam had been constructed across said river at a point near the town of Monticello and which dam was commonly known as "the old dam" and which dam raised the level of said river and thereby made the same a more desirable breeding ground for fish, and place to fish in, all of which facts were known to the defendants herein, or, by the exercise of ordinary care, could have been known at the time, and prior, and subsequent to the time as hereinafter set forth.

"That on or about said date the defendant herein duly obtained permission from proper authorities to construct a dam across said river at a point, to wit: two and one-half (2½) miles north of said dam for the purpose of raising the water in said river so as to obtain water power to operate its machinery for generating electricity to be sold in the course of its business, as aforesaid. That said defendant did construct said dam which raised the water above the old dam and during times of rains, the old dam became completely submerged.

"That said defendant negligently and carelessly failed, neglected and refused to remove said old dam from said river at the time of the completion of the new

dam, as aforesaid, but instead thereof, said defendant blasted and by and through its lawful agents, acting within the course of their employment, and for and on behalf of said defendant and at defendant's instance and request, blasted a hole in the center thereof approximately one hundred (100) feet in width, leaving approximately one hundred forty-five (145) feet of the old dam remaining in said river on either side of said hole, or gap, in a rough, ragged and jagged condition. That after the construction of said new dam, during rains and at the time when the said river was rising, said hole or gap in said old dam caused a suction to occur in the water flowing through the same, causing all objects floating in said river, including boats which passed at or near said opening, to be slowly pulled toward said opening in said dam and the suction created thereby, and submerged under the water, thereby creating a dangerous obstruction to the use of said river by fishermen and others lawfully thereon, of whom plaintiff's intestate was one, all of which was known by said defendant, or, by the exercise of ordinary care, could have been known in time to have removed said old dam and corrected said dangerous condition in said river and prevented the death of the plaintiff's intestate, as hereinafter alleged.

"That on the 8th day of April, 1933, plaintiff's intestate and one William H. Martin were lawfully in a boat fishing in said public river at a point where said river was subject to the public easement therein for fishing and boating, which said point was approximately two hundred fifty (250) feet to the north of said old dam and at which point the water ran toward the old dam, and at which point the defendant herein does not enjoy the exclusive proprietary and/or possessory rights in said river. That plaintiff's intestate was ignorant and wholly unaware of the dangerous obstruction in said

river at said point caused by said hole, or gap, in said old dam, as aforesaid. That at said time, the river had risen above the old dam due to rains that had theretofore fallen and said old dam was completely submerged, thereby creating a deceptive and latent dangerous condition, of which the defendant well knew, or by exercise of reasonable care could have known.

"That while plaintiff's intestate and said William H. Martin were lawfully fishing in said river, as aforesaid, and at a point and place where they had a lawful right to be, using due care and caution for their safety and without any fault or negligence on their part, the boat in which they were fishing was drawn toward the opening in said old dam, as aforesaid, capsized, and submerged by the suction and great pull downward exerted by the water running through said hole, or gap, as aforesaid, and plaintiff's decedent was thrown into said river and drawn beneath the water, and drowned."

The memoranda filed with the demurrer, briefly summarized, are to the effect that at the time when appellant's decedent met with the accident resulting in his death he was upon the premises of appellee as a permissive licensee, and that under such circumstances he took the premises as he found them; that the court will take judicial notice that the Tippecanoe River is a non-navigable stream, therefore not a public highway and the decedent had no right to use it as such; that the complaint failed to show that appellant's decedent, either as an individual, or as one of the general public, had acquired an easement in the waters of the Tippecanoe River, conferring upon him the right to enter thereupon for the purpose of boating or fishing; that the general public could not acquire rights of fishing by grant or prescription, which presupposes a grant, since certainty of person as to the grantee is necessary to the validity of such a grant, and that such a right could not be ac-

quired by said dedication; that there was no such thing as a public easement in the waters of a non-navigable stream in Indiana, conferring upon the public generally, or to an individual as a member of an indefinite class, the right to fish in such waters; that the amended complaint did not aver that the appellee was a mere licensee; that a trespasser could not acquire a prescriptive right of fishery; that the amended complaint showed, upon its face, that the appellant's decedent was a trespasser; that the amended complaint failed to show that the alleged negligence of the appellee was the proximate cause of the death of appellant's decedent.

In the case of *Cleveland, etc., Ry. Co.* v. *Gillespie* (1933), 96 Ind. App. 535, 173 N. E. 708, in which a transfer to the Supreme Court was denied April 28, 1933, this court summarized some of the rules defining the legal scope and effect of the filing of a demurrer to a complaint for insufficiency of facts under the fifth paragraph of §2-1007 Burns 1933, §111 Baldwin's 1934, as amended by Acts 1911, ch. 157, p. 415. Our courts have further held, under said act, that in order to uphold a trial court in sustaining a demurrer the court on appeal will look beyond the memorandum required by this section. *Bruns* v. *Cope* (1914), 182 Ind. 289, 105 N. E. 471.

In the case of *Greathouse* v. *Board, etc.*, (1926), 198 Ind. 95, 108, 151 N. E. 411, our Supreme Court said:

"A demurrer for want of facts admits as true all facts that are well pleaded, but it does not admit conclusions of law and does not admit all the conclusions which may be drawn from such facts by the pleader. Such words as are the mere expression of the pleader's opinion concerning the quality of the act, as a fact stated to have been done or the doing of which is contemplated, are not admitted as true and such expressions as 'wrongfully, unlawfully, arbitrarily,' cannot be considered in determining the sufficiency of the facts alleged in a com-

plaint when a demurrer has been imposed for want of facts. Such expressions are merely vituperative or expressions of the opinion of the pleader as to the legality of the act so characterized. *Kash* v. *Huncheon* (1891), 1 Ind. App. 361; *Western Union Tel. Co.* v. *Taggart, Aud.* (1895), 141 Ind. 281; *Ragsdale* v. *Mitchell* (1884), 97 Ind. 458; *Winstandley* v. *Rariden* (1887), 110 Ind. 140; *Chicago, etc., Co.* v. *Barker* (1908), 169 Ind. 670, 17 L. R. A. (N. S.) 542, 14 Ann. Cas. 375; *Jackson School Tp.* v. *Farlow* (1881), 75 Ind. 118.

"In *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, it was held that the doctrine that permits the consideration of indirect averments and inferences in determining the sufficiency of pleadings does not admit of inferences arising from speculation, conjecture or mere possibility, but those only which fairly and reasonably result from the facts stated. The same principle is declared in *Vivian Collieries Co.* v. *Cahall* (1915), 184 Ind. 473, and *Fauvre Coal Co.* v. *Kushner* (1919), 188 Ind. 314.

"Allegations which are impertinent or immaterial are not confessed by a demurrer. A demurrer does not confess matter of law, deduced by either party, from the facts pleaded by him. It is exclusively the province of the court to apply the law to the facts alleged. Gould, Pleading (4th ed.) 439; *Peyton* v. *Kruger* (1881), 77 Ind. 486; *Platter* v. *City of Seymour* (1882), 86 Ind. 323.

"Mere general conclusions cannot have a controlling effect where facts are specifically stated. *State* v. *Wenzel* (1881), 77 Ind. 428; *McMahan* v. *Newcomer* (1882), 82 Ind. 565; *Keepfer* v. *Force* (1882), 86 Ind. 81."

In the same case the court said that Section 2-1005 Burns 1933, §155 Baldwin's 1934, Acts 1915, p. 123, refers to conclusions of fact and does not warrant the pleading of conclusions of law.

That a paragraph of complaint must proceed upon some definite theory is so well settled that the citation of authorities in support of the proposition is unnecessary.

It is apparent from the allegations of the complaint that it is predicated upon the theory that the Tippecanoe River is a navigable stream of water in which the public has an easement, vesting in the public the right to enter thereon for the purpose of boating and fishing; that, as a member of the general public, appellant's decedent had a lawful right to enter upon the waters of the river for the purpose of fishing; that the appellee, through proper public authorities, had acquired a property right or interest in the banks and bed of the stream at the location of the old dam; that the appellee removed a portion of said dam thereby creating a dangerous condition in the river, the continued existence of which it negligently permitted, resulting in the proximate cause of the death of appellant's decedent. Did the amended complaint state a good cause of action on this theory?

In her reply brief appellant concedes that the Tippecanoe River, at the point where decedent's boat capsized, was a non-navigable stream of water. Therefore its waters are private, and it follows that the title of its riparian proprietors extends to the thread of the stream. *Ross* v. *Faust* (1876), 54 Ind. 471; *Sanders* v. *De Rose* (1934), 207 Ind. 90, 191 N. E. 331; 11 R. C. L. §19, p. 1032.

In 11 R. C. L., *supra*, §§19-21, inclusive, pp. 1032-1035, under the subject of "Fish and Fisheries," the editor has stated the general rules of law controlling the right to fish in private waters, collecting and citing many authorities in support thereof. It is there pointed out that a wide difference exists between the right to fish in private waters and the right to fish in public waters. The right to fish in public waters is vested in the public until an exclusive right is acquired by an individual, whereas in private waters the exclusive rights of fishing belong to the owners of the soil beneath the

waters. When a conveyance is made of land bounded by a non-navigable stream, unless the grant requires a different construction, the center of the stream is deemed the boundary line and each riparian owner has the right to an exclusive fishery on his side to the center thereof. If one owns the lands on both sides of the stream, ordinarily the title to the bed of the stream is vested in such owner and he has the sole privilege of fishing in that portion of the stream within his lands. It has been held that the fact that a private stream has been stocked by the state does not give others than riparian proprietors any right to take fish from the water. The public benefited by the stocking are the landowners along the stream. In the absence of some agreement to the contrary, the law presumes that the ownership of the soil and the right to fish on the waters over the same are vested in the same person. Continuing further the text says: "The right to take fish from the private waters of another may be acquired by prescription; but occasional trespasses, though continued for many years, will not form a basis for a prescriptive right. Moreover, each claimant to such prescriptive right must acquire it for himself, and the public, as such, cannot secure the right to fish in the waters by virtue of the acts of some of its members in taking fish therefrom for a long period of time. Nor can the public in general acquire the right by dedication, condemnation, legislative act, or by a change in the water so that it becomes navigable to the public. The right to enter the private lands of another and take fish from his waters is a right which cannot be acquired by custom. Though the public has customarily resorted to such waters for time immemorial and taken fish therefrom without objection, a member of the public, solely as such, cannot continue to do so after the owner has protested." As supporting the above rules of law see

*Turner* v. *Town of Hebron* (1891), 61 Conn. 175, 22 Atl. 951, 14 L. R. A. 286; *Winder* v. *Blake* (1857), 49 N. C. 332. See also 26 C. J. §§13, 14, 15, and 16, pp. 600 and 601.

In the recent case of *Sanders* v. *De Rose, supra,* the appellant, who was the riparian owner of land abutting on Center Lake in Steuben County, sought to enjoin the appellee from fishing upon that portion of the waters of the lake over the soil owned by appellant. In this particular case it was alleged that the appellee, the defendant in the court below, entered upon the lake over the lands of abutting riparian owners other than the appellant, plaintiff below, and, for the purpose of fishing, rowed his boat to waters of the lake overlying the soil of the appellant. Our Supreme Court, in reversing the lower court and holding that the appellant had the right to enjoin the appellee from fishing upon the waters of the lake overlying the soil owned by him, among other things, said (p. 95) :

> "Since the common law in relation to the ownership of land covered by the water of an inland nonnavigable lake obtains in this state, it follows that where, as here, the portion of the several owners of the bed of such lake may be determined by congressional survey, each owner has the right to the free and unmolested use and control of his portion of the lake bed and water thereon for boating and fishing; or, as said by Farnham on Waters and Water Rights, p. 1376: 'When the soil over which the water runs, and the water itself, belong to the same person, the owner cannot be correctly said to have a right to fishery, because the land and its profits are so completely identified as his inheritance that they cannot be separated. Therefore, the fishery is included in land and water; and since, in the absence of express reservation, land includes water, a grant of land will include both water and fishery.' And, at page 1427, he said: 'Since the right to fish follows the title to the soil, there is no public right of fishery in a lake the title to the bed of which is in private ownership.'

"Tiffany on Real Property, §251, declares that 'The ownership of the surface of land involves, if not the ownership, at least the control, of the space above it to an indefinite distance.'"

This would seem to dispose of appellant's theory, as alleged in the complaint, that her decedent entered upon the waters of the Tippecanoe River under an easement enjoyed by the general public. In her original brief the appellant, notwithstanding the plain allegations of the complaint, asserts that the decedent was lawfully upon the waters of the river as a licensee. The repeated assertions in the complaint that the decedent was lawfully upon the water as a licensee is not the allegation of a conclusion of fact but is the statement of a conclusion of law and cannot be considered in determining the sufficiency of the facts alleged in the complaint to state a cause of action. *Greathouse* v. *Board, supra.*

But assuming for the sake of argument that appellant's decedent was upon the river as a licensee, ■ does the complaint state facts sufficient to constitute a cause of action against the appellee?

The allegation in the complaint "and at which point the defendant herein does not enjoy the exclusive proprietary and/or possessory rights in said river" violates the rule of pleading which requires all averments to be direct and certain and not in the alternative, or in ambiguous language. *Wheeler* v. *Thayer* (1889), 121 Ind. 64, 22 N. E. 972. This has been held to vitiate the pleading. *Pittsburgh, etc., Co.* v. *Peck* (1905), 165 Ind. 537, 76 N. E. 163. When the allegations of the complaint relating to the rights of the appellee in the banks and bed of the river are considered in their entirety, they lead to the ultimate conclusion that appellee was the owner of a proprietary interest in the banks and bed of the Tippecanoe River at the location of the old dam, and that it was not a mere licensee as appellant now

insists in her brief. So the question of the duty of one licensee to another licensee, respecting the condition of the premises, is not involved in this case.

The courts recognize two classes of licensees, namely, licensees by invitation and licensees by permission. To a licensee by invitation the occupant of the premises assumes the obligation of making and maintaining them in a reasonably safe condition for the use of the licensee while he remains thereon by virtue of such invitation, and, for a violation of this duty, the owner is liable in damages to a person injured thereby who is himself free from contributory negligence. A licensee by permission is one who for his own convenience, curiosity, or entertainment, goes on the premises of another by his (the owner or occupant's) permission or sufferance. Such a licensee takes the premises as he finds them as to any defects thereon, and the owner is not liable for any injuries resulting to such licensee owing to defects in the condition of the premises. The owner is not liable for passive negligence. *Cleveland, etc., Ry. Co.* v. *Means* (1915), 59 Ind. App. 383, 104 N. E. 785; *Thistlewaite* v. *Heck* (1921), 75 Ind. App. 359, 128 N. E. 611.

In the case last cited the court said (p. 363) : "There may be a license by permission, without any enticement, allurement or inducement, or there may be a license by invitation. Thus, if one goes upon the premises of another with the permission or sufferance of the owner, he is a licensee by permission and takes the property as he finds it; the owner not being liable for passive negligence. But, if one goes upon the premises of another with the express or implied invitation of the owner or occupant, to transact business with such owner or occupant, or to do some act which is to the advantage of the owner or occupant, or to the mutual advantage of the owner or occupant and the person so entering upon the premises,

the latter is a licensee by invitation, as distinguished from a licensee by permission. A license by invitation is inferred where there is a common interest or mutual advantage, while a license by permission is inferred where the object is the pleasure or benefit of the person entering upon the property, and which will not in any wise enure to the benefit of the owner or occupant. In order to infer an inducement to enter the facts must be sufficient to show an express or implied invitation. Mere acquiescence or failure to object is not sufficient to sustain the inference of invitation."

That the allegations of the complaint in the instant case are insufficient to state a cause of action upon the theory that appellant's decedent was upon appellee's premises as a licensee is clearly manifest when tested by the rules of law announced in the case of *Lingenfelter* v. *Baltimore, etc., Ry. Co.* (1899), 154 Ind. 49, 52, 55 N. E. 1021. In that case the court said:

"He is not shown to have been upon the premises in controversy in respect to or by reason of any business which he had to transact with the railroad company. There is certainly nothing to disclose that he was upon the company's grounds by reason of any invitation or inducement from it, either express or implied. In the absence of anything to the contrary, we may reasonably assume that he was simply exercising the privilege of using this short cut pathway for his own accommodation or convenience. Upon no view of the case can he be considered as anything more than a mere licensee, and his case falls within the general rule applicable to such persons. The fact that he was passively permitted or suffered by appellee, along with others of the public, to pass over its grounds for his own convenience, may be accepted as showing that he, at the time of the accident, was not a trespasser; but certainly such fact alone can not be regarded as sufficient to show that he was upon appellee's premises by its inducement or invitation, express or implied.

"The decisions of this court fully affirm and

support the rule that where a person goes upon the premises or lands of another, without any inducement or invitation being held out to him by the owner or occupant, he accepts the use of the premises subject to all dangers incurred thereby in their use or enjoyment; or, in other words, the law, as a general rule, does not cast the duty upon such owner or occupant, under such circumstances, to exercise care over the licensee, or to see that he does not incur danger; but he must accept his permission to go upon the premises with all of the concomitant conditions and perils of such premises, and as a general rule he can not recover for injuries caused by obstructions or pitfalls thereon. Of course, this rule is subject to the exception that the licensor must not wilfully or wantonly cause the injury to the licensee."

Other contentions are urged upon us for consideration, but they are not germane to the cause of action which the appellant seeks, by her complaint, to state against appellee. It is therefore not necessary that we extend this opinion for the purpose of their consideration.

Because of insufficient facts, the complaint does not state a cause of action. Judgment affirmed.